470 F.2d 669
 81 L.R.R.M. (BNA) 2336, 69 Lab.Cas. P 13,011
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
TRAGNIEW, INC., and Consolidated Hotels of California, Respondent.
TRAGNIEW, INC., and Consolidated Hotels of California, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 71-1944, 71-2536.
 United States Court of Appeals,
Ninth Circuit.
 Sept. 8, 1972.
 
 1
 Robert A. Giannasi, Atty. (argued), Edward P. Wendel, Atty., Marcel Mallet-Prevost, Asst. Gen. Counsel, Peter G. Nash, Gen. Counsel, NLRB, Washington, D. C., Abraham Siegel, Director, Region 31, NLRB, Los Angeles, Cal., for appellant.
 
 
 2
 Michael D. Koomer (argued), of Cooper, Wyatt, Tepper & Plant, Los Angeles, Cal., Leo Geffner, of Geffner & Satzman, Levy and Van Bourg, A Professional Corp., Los Angeles, Cal., for appellee.
 
 
 3
 Before CHAMBERS and CHOY, Circuit Judges, and POWELL,* District Judge.
 
 POWELL, District Judge:
 
 4
 This case comes before the Court on cross-petitions. The National Labor Relations Board petitions for enforcement of its Order of October 12, 1970. Tragniew, Inc. and Consolidated Hotels of California (hereinafter "Tragniew") petition to set aside the Order of the Board. The Decision and Order of the Board are reported at 185 NLRB No. 132. Review lies in this Court pursuant to 29 U.S.C. Sec. 160(e).
 
 Facts
 
 5
 Barrington Plaza is an apartment and office complex in Los Angeles, California. Shortly after completion in 1962, Service and Maintenance Employees Union, Local 399, an AFL-CIO affiliate, solicted union membership and representation at Barrington Plaza. On March 21, 1963 Local 399 and Lesser Development Corporation, then owner of the Plaza, entered into a California Conciliation Service Cross-Check Election Agreement; both parties were bound by the results of the election. Local 399 agreed to refrain from raising the question of union representation at the Plaza for a period of one year.
 
 
 6
 The election was held on March 27, 1963. Although Local 399 obtained a numerical majority of union authorization cards, the Conciliation Service invalidated a number of them, and determined that Local 399 failed to represent a majority of the employees at the Plaza. Local 399 pickets appeared and were enjoined by the Los Angeles Superior Court. Yet on September 24, 1963 the Lesser Development Corporation and Local 399 entered into a collective bargaining agreement covering building maintenance employees at the Plaza. This agreement was effected by means of an assignment from Security Maintenance Service, Inc., a company which provided maintenance services at other office buildings owned by Lesser Development Corporation. The collective bargaining agreement between Local 399 and Security Maintenance offered a wage rate below the prevailing rate in the maintenance industry and was acceptable to Lesser Development Corporation.
 
 
 7
 In June 1965 Lesser Development sold the Plaza to Barrington Enterprises. Local 399 substituted the new employer for the old. The Federal Housing Administration foreclosed on the interest of Barrington Enterprises on June 1, 1966, and hired the Ben Hecht Company to manage the Plaza. On behalf of the Federal Housing Administration the Ben Hecht Company on May 19, 1967 entered into a collective bargaining agreement with Local 399, which provided for termination upon sale of the Plaza. In negotiating the agreement, the Federal Housing Administration specifically rejected an assignability clause binding any succeeding owner at the Plaza. The agreement was made retroactive to January 1, 1967.
 
 
 8
 During May of 1967 Local 399 learned that Tragniew was to take over the Plaza. Initial contacts with Tragniew management evidenced hositility toward the union. On May 25, 1967 representatives of Local 399 met with employees in a concerted effort to sign them up in anticipation of the change of ownership. Effective midnight May 31, 1967 the collective bargaining agreement ceased by its terms and all employees of the Ben Hecht Company at the Plaza were terminated. On June 1, 1967 Tragniew commenced operations at the Plaza, hiring new employees and rehiring former employees who indicated they were nonunion. On several occasions after June 1, 1967 Local 399 contacted Tragniew with respect to its representation at the Plaza. Tragniew adamantly refused to recognize Local 399 or hire union members; instead it solicited new employees through newpaper advertisements. On June 6, 1967 Local 399 filed its complaint charging Tragniew with unfair labor practices.
 
 Trial Examiner's Opinion and Findings
 
 9
 The Trial Examiner in his opinion found that Local 399 had lost the election of March 27, 1963 and made no other efforts until the hearing to show membership support. The collective bargaining agreement entered into between Local 399 and Lesser Development Corporation, it was decided, was solely an arrangement to by-pass the injunction against the union and did not constitute the assent of a majority of the Plaza employees; Tragniew was not estopped, therefore, to question Local 399's representation by the failure of prior employers to question majority representation. The opinion stated that applications showing a majority of the employees supported Local 399 were tainted by coercion, but the manner in which Tragniew rehired employees was discriminatory. The Trial Examiner found that Local 399 was not the majority representative of the employees at the Plaza.[1] He recommended to the Board that Tragniew cease and desist from discriminatory hiring practices.
 
 Proceedings before the Board
 
 10
 The Board viewed the evidence differently from the examiner, concluding that the collective bargaining agreement in force presumably demonstrated majority representation by Local 399. Tragniew, Inc. and Consolidated Hotels were found to be a single integrated employer engaging in unfair labor practices. The unfair practices involved refusing to bargain with Local 399, discriminating against union members in hiring, and threatening union members, in violation of Section 8(a)(1), (3) and (5) of the Act, respectively. The Order of the Board directs Tragniew to cease and desist from the above mentioned practices, and affirmatively directs it to offer employment to former Plaza employees.
 
 Refusal to Bargain
 
 11
 The Labor Management Relations Act, Section 8(a)(5), 29 U.S.C. Sec. 158(a)(5), declares refusal to bargain by an employer with representatives of his employees an unfair labor practice. The initial determination to be made is whether the union charging such a violation qualifies as a bargaining representative. NLRB v. Burns International Security Services, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972). In the first instance the burden rests with the union to establish its status as a majority representative. NLRB v. Gissel Packing Co., 395 U.S. 575, 595-598, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); NLRB v. Dahlstrom Metallic Door Co., 112 F.2d 756, 757 (2d Cir. 1940); Ramada Inns, Inc., 171 NLRB No. 115 (1968). See also, 29 U.S.C. Sec. 159(a). The failure of a union to establish its majority status exonerates the employer from charges of refusal to bargain. See International Ladies' Garment Workers' Union v. NLRB, 366 U.S. 731, 737-738, 81 S.Ct. 1603, 6 L. Ed.2d 762 (1961); International Ass'n of Machinists, Dist. Lodge 94 v. NLRB, 134 U.S.App.D.C. 239, 414 F.2d 1135, 1138 (1969); Maphis Chapman Corp. v. NLRB, 368 F.2d 298, 302 (4th Cir. 1966).
 
 
 12
 The record is filled with evidence pertinent to union majority status. Tragniew argues vigorously that Section 10(b) does not bar evidence of the union's loss of the March 1963 certification election. If this evidence were admissible, it would of necessity show the lack of majority representation on the part of the union.[2] However, it is not.
 
 
 13
 Section 10(b), which literally applies only to the filing of complaints,[3] has been held to extend to all evidence of prior unfair practices. Local Lodge No. 1424, etc. v. National Labor Relations Board (Bryan Mfg. Co.), 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960) interpreted Section 10(b) to prohibit reviving defunct unfair practice claims which unsettle labor-management relations. Decisions since Bryan Mfg. Co. have applied its principle to bar defenses based on unfair labor practices, as well. NLRB v. District 30, United Mine Workers (Blue Diamond), 422 F.2d 115 (6th Cir. 1969); Int'l Hod Carriers, Local 1298 (Roman Stone), 153 NLRB 659 (1965); Lane-Coos-Curry-Douglas Counties Bldg. & C. T. C. v. NLRB, 415 F.2d 656, 659 n. 7 (9th Cir. 1969). The weight of these precedents, including the Lane case of this Circuit, resolves the issue against the contention of Tragniew and bars the evidence of any unfair labor practice of Local 399 in obtaining their prior collective bargaining agreements.
 
 
 14
 As contended by Tragniew, Section 10(b) does not bar all evidence of events outside the statutory six-month period, which bears upon lack of majority representation within that period.[4] It was permissible for the Trial Examiner to admit evidence as to the manner in which Local 399 obtained and operated under its collective bargaining agreements. Throughout the entire period at the Plaza, the union did not adhere to its collective bargaining agreements or membership rules. Employee hours were reduced. The union collected few dues; and so far as appears no deductions were made for vacation benefits and the union health and welfare fund. Members paid no dues at all after October 1966. No initiation dates were ever listed on membership rolls. Only passive union activities took place at the Plaza. The fact that Local 399 lost the election of March 1963 explained the necessity for the meeting of May 25, 1967, and the efforts of the union thereat. Despite the bargaining agreement reached on May 19, 1967 with the Ben Hecht Company, Local 399 fully recognized that it did not represent a majority of the employees at the Plaza and proceeded immediately to sign them up.
 
 
 15
 The Trial Examiner specifically found the applications for membership upon which the union relied for a showing of majority representation under the Ben Hecht Company bargaining agreement were tainted with coercion. General Counsel introduced a numerical majority of employee applications for union membership.[5] However, the employees called during the hearing displayed no allegiance to the union. Instead their testimony was that they were told they had to join the union; moreover they were told they had to join the union to keep their jobs or get their jobs back. But this was not all. They said they paid no dues or application fee. Several of the employees were Mexican-Americans who spoke little or no English. These individuals confessed that they did not know what they had signed when they signed applications for union membership. In one instance, an application was not signed by the employee offering it but by another. Also at the time of the meeting on May 25, 1967 a member of the Ben Hecht Company management was present, ostensibly aiding in the signup by giving it official sanction.[6]
 
 
 16
 With respect to the applications, the inescapable inference from the evidence points to coercion in some instances and to total lack of understanding by the employees in others. The Board does not object to the finding of coercion by the Trial Examiner and therefore on this review it will be accepted as a verity. It is supported by the evidence.
 
 
 17
 The Board contends that substantial evidence supports its conclusions. It is true that the "substantial evidence" test delimits the scope of judicial review accorded this Court. Universal Camera Corp. v. NLRB, 340 U.S. 474, 490-491, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Yet when the Board does not question the factual findings of the Trial Examiner, the only duty of the Court is to see that they are supported by substantial evidence. Due regard must, of course, be given to the opportunity of the Trial Examiner to judge the demeanor and credibility of the witnesses and exhibits produced before him. The Board set aside these factual findings, choosing to rely as a matter of law upon the presumption of the continuing validity of the collective bargaining agreement.
 
 
 18
 Presumptions in the law are a procedural substitute for evidence. They recognize the probability of a fact and impose the proof of the non-existence of that fact upon the party against whom the presumption is asserted. See Proposed Federal Rules of Evidence, Rule 301; McCormick Evidence Sec. 309 (1954); 29 Am.Jur.2d Evidence Sec. 165 (1967). The presumption of majority representation here involved is rebuttable by clear, cogent and convincing evidence. See, e. g., Ref-Chem. Company v. NLRB, 418 F.2d 127, 130 (5th Cir. 1969). The findings of the Trial Examiner rebut the presumption of majority on which the Board relies. The Board may not displace the uncontroverted factual findings of the Trial Examiner by a presumption. Accordingly, enforcement of the order of the Board directing Tragniew to bargain with Local 399 is denied.
 
 Discrimination in Hiring
 
 19
 Tragniew in its brief does not defend its discriminatory hiring practices. They appear to be indefensible. Section 8(a) prohibits discrimination in discharge or hiring on the basis of union membership.[7] The record adequately supports the Trial Examiner's finding of interference and discrimination by Tragniew in rehiring employees at the Plaza. Enforcement of the Board's order finding Tragniew violated Section 8(a)(1) and (3) of the Act is granted.
 
 
 20
 *****
 
 
 21
 * * *
 
 
 
 *
 The Honorable Charles L. Powell, United States District Judge for the Eastern District of Washington, sitting by designation
 
 
 [1]
 "In conclusion, I find that the Union was not, on May 19, 1967, the majority representative of Hecht's employees in the appropriate unit and was not on or after June 1, 1967, the statutory representative of Respondent's employees, despite the unfair labor practices of Respondent herein found, because those unfair labor practices did not contribute to a loss of proved majority." (TR 65)
 
 
 [2]
 There can be no majority representation under unlawfully obtained collective bargaining agreements. See, International Ladies' Garment Workers' Union v. NLRB, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961); Local Lodge No. 1424, etc. v. National Labor Relations Board (Bryan Mfg. Co.), 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960); International Association of Machinists v. Labor Board, 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50 (1940)
 
 
 [3]
 29 U.S.C. Sec. 160(b) reads in part as follows:
 ". . . Provided, That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board. . . ."
 
 
 [4]
 In this regard Bryan Mfg. Co., 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960), laid down the following rule:
 "It is doubtless true that Sec. 10(b) does not prevent all use of evidence relating to events transpiring more than six months before the filing and service of an unfair labor practice charge. However, in applying rules of evidence as to the admissibility of past events, due regard for the purposes of Sec. 10(b) requires that two different kinds of situations be distinguished. The first is one where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitations period; and for that purpose Sec. 10(b) ordinarily does not bar such evidentiary use of anterior events. The second situation is that where conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice. There the use of the earlier unfair labor practice is not merely 'evidentiary,' since it does not simply lay bare a putative current unfair labor practice. Rather, it serves to cloak with illegality that which was otherwise lawful. And where a complaint based upon that earlier event is time-barred, to permit the event itself to be so used in effect results in reviving a legally defunct unfair labor practice." (at 416-417, 80 S.Ct. at 826).
 
 
 [5]
 Department Store Food Corp. of Pennsylvania v. NLRB, 415 F.2d 74, 77 n. 4 (3rd Cir. 1969) acknowledged that a strict numerical-majority approach was not desirable. The Trial Examiner is free to consider inferences from the evidence which indicate coercion tainted a numerical majority. See, NLRB v. Clement Brothers Company, 407 F.2d 1027, 1029-1030 (5th Cir. 1969); Terrell Machine Company v. NLRB, 427 F.2d 1088, 1090 (4th Cir. 1970)
 
 
 [6]
 Numerous cases forbid the participation of management in the solicitation of union membership applications. National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 588, 61 S.Ct. 358, 85 L.Ed. 368 (1941); International Ass'n of Machinists etc. v. National Labor Relations Board, 311 U.S. 72, 78, 61 S.Ct. 83, 85 L.Ed. 50 (1940); NLRB v. American Beef Packers, Inc., 438 F.2d 331 (10th Cir. 1971); Department Store Food Corp. of Pennsylvania v. NLRB, 415 F.2d 74, 76-77 (3rd Cir. 1969); Hughes & Hatcher, Inc. v. NLRB, 393 F.2d 557, 565-567 (6th Cir. 1968)
 
 
 [7]
 In part 29 U.S.C. Sec. 158 reads:
 "(a) It shall be an unfair labor practice for an employer-
 (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
 (3) "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization. . . ."